LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (SBN 144074)
Email: dalekgalipo@yahoo.com
Tanya Sukhija (SBN 295589)
Email: tsukhija@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

LAW OFFICE OF JAMES S. TERRELL
James S. Terrell, Esq. (SBN: 170409)
Email: jim@talktoterrell.com
15411 Anacapa Road
Victorville, CA 92392
Tel: (760) 951-5850
Fax: (760) 952-1085

LAW OFFICE OF SHARON J. BRUNNER
Sharon J. Brunner, Esq. (SBN: 229931)
Email: sharonjbrunner@yahoo.com
14393 Park Avenue, Suite 100
Victorville, CA 92392
Tel: (760) 243-9997
Fax: (760) 843-8155

Attorneys for Plaintiffs:
DANIELLA SLATER, DAMIEN SLATER,
TINA SLATER, AND DAVID BOUCHARD

# UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DANIELLA SLATER AND DAMIEN SLATER, individually and as successors in interest, by and through their Guardian ad Litem Sandra Salazar; TINA SLATER AND DAVID BOUCHARD, individually;** | **Case No. 5:16-CV-01103-JFW-KK** |
| | [*Hon. John F. Walter*] |
| **Plaintiffs,** | **PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE, TESTIMONY, OR REFRENCE TO EXCITED DELIRIUM SYNDROME** |
| **vs.** | |
| **DEPUTY SHANDON DEASEY; DEPUTY PETER GENTRY; DEPUTY GARY BRANDT; SGT. MIKE RUDE; COUNTY OF SAN BERNARDINO; and DOES 1-10, INCLUSIVE.** | Hrg. Date: Oct. 6, 2017 |
| | Time: 9:00 a.m. |
| **Defendants.** | Pre-Trial Conf.: Sept. 29, 2017 |
| | Trial: Oct. 17, 2017 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on October 6, 2017, at 9:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 7A of the above-entitled Court, Plaintiffs will and hereby do move the Court by way of this Motion *in Limine* No. 3 to exclude any evidence, testimony, or reference to excited delirium syndrome.

**Statement of Local Rule 7-3 Compliance**: This motion is made following the conference of counsel between lead counsel for Plaintiffs and Defendants which took place on September 6, 2017, during which no resolution could be reached.

Pursuant to this Court's Scheduling Order [Dkt. 20], the parties submit a Joint Motion *in Limine* including each party's contentions and memorandum of points and authorities. This Motion is based on this Notice of Motion, each party's contentions and memorandum of points and authorities included herewith, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

DATED: September 18, 2017    LAW OFFICES OF DALE K. GALIPO
                             LAW OFFICE OF SHARON J. BRUNNER
                             LAW OFFICE OF JAMES S. TERRELL

                             By:    _/s/ Dale K.Galipo_____
                                    Dale K. Galipo
                                    *Attorneys for Plaintiffs*

DATED: September 18, 2017    MANNING & KASS, ELLROD, RAMIREZ & TRESTER

                             By:    _/s/ Andrea K. Kornblau_____
                                    Tony Sain
                                    Andrea K. Kornblau
                                    *Attorneys for Defendants*

# TABLE OF CONTENTS

**I.   PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE NO. 3 ......................................................... 1**

    A.    Introduction ............................................................................................ 1

    B.    Legal Standard ........................................................................................ 1

    C.    Defendants' Expert Testimony Regarding "Excited Delirium" Does not Satisfy the *Daubert* Standard. ............................................................... 2

            1.    *Defendants' Experts Were Not Properly Designated to Render Opinions Regarding "Excited Delirium" or Have Not Demonstrated Sufficient Qualifications to Render Such Opinions.* ............................. 2

            2.    *Evidence or Testimony Regarding "Excited Delirium" is Not the Product of Reliable Principles and Methods.* ....................................... 4

            3.    *Defendants' Experts Have Not Reliably Applied the Principles and Methods to the Facts of This Case.* ..................................................... 6

            4.    *Evidence of "Excited Delirium" Will Not be Helpful to the Jury.* ...... 10

    D.    In the Alternative, Evidence Regarding "Excited Delirium" Should be Excluded Under Federal Rule of Evidence 403 ........................................... 12

    E.    Conclusion ............................................................................................. 13

**II.  DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3 .................... 13**

    A.    The Opinions of Defendants' Medical Experts Regarding Excited Delirium are Relevant and Admissible ....................................................... 13

            1.    *Defendants' Expert Designations And Reports Were Sufficient To Put Plaintiffs On Notice That Defendants' Medical Experts Would Render Opinions On Excited Delirium.* ............................................... 14

            2.    *Defendants' Medical Experts Are Sufficiently Qualified To Render Opinions As To Excited Delirium.* ........................................................ 15

            3.    *Excited Delirium Has Been Determined To Be The Product Of Reliable Principles And Methods.* ....................................................... 16

            4.    *Defendants' Medical Experts Have Reasonably Applied The Principles And Methods To The Facts Of This Case.* ........................... 17

     5.     *Expert Medical Opinions As To Excited Delirium Will Assist The Trier Of Fact.* ........................................................................... 18

     6.     *The Evidence Of Excited Delirium Is More Probative Than Prejudicial And Should Not Be Excluded Under Federal Rule of Evidence 403.* .................................................................... 19

   B.    Conclusion ................................................................................ 19

**III.**   **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 3** ................................................................................. 20

   A.    Defendants Unpersuasively Argue that Their Experts Were Properly Designated or Qualified to Render Opinions Regarding Excited Delirium. 20

   B.    Experts' Expertise and Peer Reviewed Publications are Relevant Factors Regarding Admissibility of Expert Opinion. ................................. 21

   C.    Defendants Fail to Persuasively Argue that Theories Regarding Excited Delirium are the Product of Reliable Principles and Methods. ................... 22

   D.    Defendants Unpersuasively Argue Their Experts Reasonably Applied their Principles and Methods to the Facts of This Case. ...................................... 23

   E.    Defendants Fail to Explain How Opinions Regarding "Excited Delirium" Will be Helpful to the Jury, and There is No Articulable Probative Value that Could Outweigh its Prejudicial Nature. ................................................. 24

   F.    Conclusion ................................................................................ 24

**Note:** *Plaintiffs' counsel was unsure whether replies are to be included herewith, but for the sake of completeness and as the Court requests no separately filed or supplemental briefing regarding motions in limine beyond this jointly filed document, Plaintiffs included replies out of an abundance of caution and so the Court may fully consider the motion on its merits. If the Court does not wish to review replies, the reply section herein may be disregarded.*

# TABLE OF AUTHORITIES

**Federal Cases**

*Affiliated FM Ins. Co. v. LTK Consulting Servs.*,
    2014 U.S. Dist. LEXIS 53211, *10 (W.D. Wash. Apr. 16, 2014)..................16

*Arlio v. Lively*,
    474 F.3d 46, 53 (2d Cir. 2007) ...............................................................12

*Blancha v. Raymark Indust.*,
    972 F.2d 507, 516 (3d Cir. 1992)............................................................12

*Boyd v. City and County of San Francisco*,
    576 F.3d 938, 945 (9th Cir. 2009)...........................................................14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)............................................1, 11, 14, 21, 22, 23

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*,
    43 F.3d 1311, 1315 (9th Cir. 2014).........................................................11

*Domingo ex rel. Domingo v. T.K.*,
    289 F.3d 600, 607 (9th Cir. 2002)............................................................8

*Ericson v. City of Phoenix*,
    2016 U.S. Dist. LEXIS 152641, *13 (D. Ariz., Nov. 3, 2016)......................15

*Estate of Barnwell v. Roane Cnty.*,
    2016 U.S. Dist. LEXIS 48861 (E.D. Tenn. Apr. 12, 2016)....................16, 17

*Friend v. Time Mfg. Co.*,
    422 F.Supp.2d 1079, 1081 (D. Ariz. 2005)...............................................8

*General Electric Co. v. Joiner*,
    522 U.S. 136, 146 (1997)..................................................................8, 10

*Hangarter v. Provident Life & Accident Ins. Co.*,

PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE, TESTIMONY, OR REFERENCE TO
EXCITED DELIRIUM SYNDROME

373 F.3d 998, 1015 (9th Cir. 2004)………………………………………………….15

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
318 F. Supp. 2d 879, 890 (C.D. Cal. 2004)………………………………………..23

*Kennedy v. Collagen Corp.*,
161 F.3d 1226, 1230 (9th Cir. 1998)………………………………………………...18

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137, 152 (1999)……………………………………………………1, 6, 14

*McCrary v. Elations Co. LLC*,
No. EDCV130242JGBSPX, 2014 WL 12589137, at *12 (C.D. Cal. Dec. 2, 2014)
…………………………………………………………………………………9, 11

*Murray v. S. Route Mar. SA*,
No. 14-36056, 2017 WL 3758326, at *5 (9th Cir. Aug. 31, 2017)………………..22

*Petro v. Town of West Warwick ex rel. Moore*,
889 F.Supp.2d 292, 317 (D.R.I. 2012)…………………………………………..9-10

*Rockwell v. Yukins*,
341 F.3d 507, 513 (6th Cir. 2003)………………………………………………..12

*Scott v. Ross*,
140 F.3d 1275, 1286 (9th Cir. 1998)……………………………………………..16

*Stilwell v. Smith & Nephew, Inc.*,
482 F.3d 1187, 1191-92 (9th Cir. 2007)…………………………………………..11

*Thomas v. Newton Int'l Enters.*,
42 F.3d 1266, 1269 (9th Cir. 1994)………………………………………………..15

*United States v. Garcia*,
7 F.3d 885, 890 (9th Cir. 1993)…………………………………………………..16

*United States v. Kenny*,
645 F.2d 1323, 1342 (9th Cir. 1981)……………………………………………..19

PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE, TESTIMONY, OR REFERENCE TO
EXCITED DELIRIUM SYNDROME

*U.S. v. Scholl*,
 959 F.Supp. 1189, 1191 (D. Ariz. 1997)…………………………………………21


**Federal Rules of Evidence**

Fed. R. Evid. 403…………………………………………………………..12, 14, 19

Fed. R. Evid. 702…………………………………………………………..2, 13

Fed. R. Evid. 702(b)………………………………………………………………9

Fed. R. Evid. 703…………………………………………………………………2

PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE, TESTIMONY, OR REFERENCE TO
EXCITED DELIRIUM SYNDROME

# I.     PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE NO. 3

## A.     Introduction

This civil rights action arises from the in-custody death of Joseph Slater ("Mr. Slater") on April 15, 2015. By this Motion in Limine, Plaintiffs seek to exclude any evidence, testimony, or reference to excited delirium syndrome. Plaintiffs contend such evidence does not satisfy the admissibility standard of expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rules of Evidence 702 and 703, and would also be unfairly prejudicial under Rule 403.

## B.     Legal Standard

The gatekeeping requirement of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) is to ensure the reliability and relevancy of expert testimony; "it is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Court must assess (1) the expert's qualification to present the opinions offered, (2) "whether the reasoning or methodology underlying the testimony is scientifically valid," and (3) "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. "[T]he trial Judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id*. at 589. An expert's opinion is deemed sufficiently reliable if his conclusions are based on the knowledge and experience of his or her discipline rather than on a "subjective belief or unsupported speculation." *Id*. at 599.

Additionally, in order to assess the expert's qualification to present the opinions offered, the Court looks to Federal Rules of Civil Procedure, Rules 702 and 703. *Id*. at 592.

Federal Rules of Evidence 702, provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Federal Rules of Evidence 703, provides:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

## C. Defendants' Expert Testimony Regarding "Excited Delirium" Does not Satisfy the *Daubert* Standard.

Several of Defendants' experts rendered opinions that Mr. Slater suffered from "excited delirium" and that this was a cause of his death. Defendants' experts Richard Ruffalo, Richard Clark, and Charles Wetli all offer opinions that Mr. Slater suffered from "excited delirium". Report of Richard Ruffalo, attached as Exhibit 1 to Declaration of Tanya Sukhija ("Exh. 1") at 17; Report of Richard Clark, attached as Exhibit 2 to Declaration of Tanya Sukhija ("Exh. 2"), at 11-12;  Report of Charles Wetli, attached as Exhibit 3 to Declaration of Tanya Sukhija ("Exh. 3"), at 4.

### 1. *Defendants' Experts Were Not Properly Designated to Render Opinions Regarding "Excited Delirium" or Have Not Demonstrated Sufficient Qualifications to Render Such Opinions.*

None of the aforementioned experts were designated by Defendants to render opinions regarding "excited delirium". According to Defendants' initial and supplemental expert disclosures, Dr. Ruffalo was designated to address "pharmacology,

toxicology, narcotics effects and capacities and relation to causation/contribution of death, and comparable toxicological and medical factors"; Dr. Clark was designated to address "narcotics-related behaviors and capacities and comparable toxicological and medical factors"; and Dr. Wetli was designated to address "causation of death for decedent and related forensic pathological/medical issues" solely as a rebuttal expert regarding the opinions of Dr. O'Halloran. Defendants' Supplemental Expert Disclosures, attached as Exhibit 4 to Declaration of Tanya Sukhija at 3-4. In fact, during Dr. Clark's deposition, Defendants' counsel Mr. Sain himself repeatedly objected to questions by Plaintiffs' counsel related to "excited delirium" on the basis that such questions "exceed[] the scope of this witness's expert designation in this case" and on the basis of "relevance".[1] Deposition of Richard Clark, attached as Exhibit 5 to Declaration of Tanya Sukhija ("Exh. 5"), at 40:19-25, 42:8-15, 47:6-48:7. Plaintiffs merely asked Dr. Clark questions about "excited delirium" because he extensively discussed the issue in his report, but Defendants' counsel's repeated objections unambiguously indicated "excited delirium" is beyond the scope of his designation and irrelevant in this case. Accordingly, as Defendants' experts were not retained to offer opinions on this matter and they were not properly designated to render such opinions, opinions regarding "excited delirium" should not be permitted at trial. Particularly as to Dr. Wetli, he was designated as a rebuttal expert to rebut the opinions of Dr. O'Halloran. However, Dr. O'Halloran did not render any opinions regarding "excited delirium"—only as to positional asphyxia. Accordingly, for Dr. Wetli to render new opinions about "excited delirium" are beyond the scope of his designation and rebuttal report.

---

[1] Plaintiffs do not claim that Defendants' counsel instructed the expert not to answer or prohibited Plaintiffs from asking Dr. Clark questions regarding "excited delirium" or otherwise; Plaintiffs merely reference objections made by Defendants' counsel on the record.

Notably, with the exception of Dr. Clark, none of Defendants' experts who render opinions regarding "excited delirium" have demonstrated sufficient qualifications to do so. According to Dr. Ruffalo's curriculum vitae, he has never published any peer reviewed journal articles (nor for that matter any articles published in non-peer reviewed sources) regarding excited delirium. None of the experience listed on his curriculum vitae reflect any research, work, experience, or other knowledge of "excited delirium". As for Dr. Wetli, Defendants never produced his curriculum vitae or other record of his qualifications with his report and accordingly there is no evidence that has been (timely) produced in this case demonstrating that he is qualified to render opinions regarding "excited delirium".

Furthermore, to the extent any non-experts render opinions regarding "excited delirium" or whether Mr. Slater was in a state of "excited delirium," such would also constitute improper lay witness testimony. Accordingly, absent properly designating experts to render opinions on this issue and absent making an adequate showing that Defendants' experts are qualified and have expertise in this area, evidence regarding "excited delirium" should be excluded.

## 2. *Evidence or Testimony Regarding "Excited Delirium" is Not the Product of Reliable Principles and Methods.*

Testimony regarding "excited delirium" is not the product of reliable principles and methods and lacks foundation. Defendants' experts are unable to distinguish "excited delirium" from drug intoxication. Dr. Clark conceded in his deposition that excited delirium "is a little difficult to separate out from intoxication from methamphetamine." Exh. 5 at 40:19-41:4, see also Exh. 5 at 65:14-21. Dr. Ruffalo too, was apparently unable to effectively distinguish "excited delirium" from methamphetamine intoxication. Dr. Clark even concedes that "individuals intoxicated with or under the influence of methamphetamines and other stimulants that do not display 'excited delirium' can still become violent, behave irrationally and combatively

and use poor judgment while under the influence of or intoxicated by these drugs." Exh. 2 at 11. When asked whether "excited delirium" is associated with elevated temperatures, Dr. Ruffalo responded "Most often. But so is methamphetamine intoxication. And so the issue is it could be either one. And as I said, it could be strictly methamphetamine intoxication." Deposition of Richard Ruffalo, attached as Exhibit 6 to Declaration of Tanya Sukhija ("Exh. 6"), at 43:25-44:8. Even someone not in a state of excited delirium (or methamphetamine intoxication for that matter) could engage in conduct such as pulling out wires or vandalism. Deposition of Charles Wetli, attached as Exhibit 7 to Declaration of Tanya Sukhija ("Exh. 7"), at 36:24-37:3, 90:23-91:12, 92:6-9.

Furthermore, Mr. Clark repeatedly explains that "excited delirium" is not well understood. He notes, "**For reasons not completely understood**, users who develop excited delirium display unpredictable agitation while under the influence…" and "The mechanism of the sudden death syndrome **is unclear**…" Exh. 2 at 11 (emphasis added). Dr. Charles Wetli also describes "excited delirium", noting that "**It is thought** that the mechanism of death is the result of the accumulation of lactic acid in the blood with an accompanying profound drop in blood pH (lactic acidosis) and upon, cessation of strenuous exertion, a surge in the hormone nor-epinephrine which is known to stop the heart…" Exh. 3 at 4 (emphasis added). Dr. Wetli further testified that not all the specific causes of "excited delirium" are known, indicating "there are still a lot of questions about what causes [excited delirium] in some people and not in others, and so forth. There's a lot that has to be learned about it yet." Exh. 7 at 96:5-14.

"Excited delirium" syndrome is also not a medical diagnosis that is recognized by the American Medical Association, and has not been generally accepted by the scientific community. Dr. Wetli even testified he "would not expect it to be" a recognized medical diagnosis. Exh. 7 at 31:11-15. Plaintiffs' medical expert Dr. Ronald

O'Halloran in his supplemental report also expressed his disagreement with Dr. Ruffalo's opinions regarding "excited delirium", explaining that "excited delirium"

> "is a loosely defined syndrome with little specificity and a strong association with custody restraint situations. The mechanism of death is said to be unknown and speculated to be an arrhythmia. Since the only findings or observations that seem to be fairly consistent in an [excited delirium diagnosis] is delirium and hyperactivity at some point by the victim, I see no reason for Dr. Ruffalo to invoke [excited delirium] as a more precise description of Mr. Slater's cause of death. The same findings are common with methamphetamine intoxication."

Supplemental Report of Ronald O'Halloran, attached as Exhibit 8 to Declaration of Tanya Sukhija ("Exh. 8"), at 3.[2] Where such a theory has not been adequately proven or tested and is not well understood, this calls into question the "factual basis, data, principles, methods, or their application" such that there is insufficient reliable basis for it to be admissible. *Kumho Tire Co*., 526 U.S. at 149.

3.   ***Defendants' Experts Have Not Reliably Applied the Principles and Methods to the Facts of This Case.***

The theory of excited delirium cannot be reliably applied to the facts of this case because there is no evidence to support that Mr. Slater in fact was in a state of "excited delirium". First of all, Defendants' expert Dr. Richard Clark, who goes most in depth into the theory of "excited delirium" provides information about "excited delirium" that is so general as to have no specific applicability to Mr. Slater's case. Throughout his report, he makes observations that persons with "excited delirium" have abnormal blood pressure, develop "dangerously elevated body temperatures", electrolyte (chemical) abnormalities in the blood, elevations in potassium, and increased acidity of the blood (metabolic acidosis). Exh. 2 at 11-12. For example, he describes very

---

[2] The same analysis by O'Halloran would similarly refute opinions rendered by Dr. Wetli during his deposition. Exh. 7 at 114:20-115:3.

PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE, TESTIMONY, OR REFERENCE TO
EXCITED DELIRIUM SYNDROME

generally that "[m]any times, **they** [persons who enter an excited delirium state] develop agitated behavior, abnormal vital signs including heart rate and blood pressure, and often, dangerously elevated temperature…."; "During this excited delirium or even in extreme states of methamphetamine intoxication in the absence of excited delirium, **subjects** are also at risk for sudden death…"; "Many times, once **these subjects** deteriorate from the rapid irregular heart rate….". *Id*. at 12. These are all hypothetical situations which have no application to Mr. Slater.

Dr. Clark only relates these hypotheticals to Mr. Slater when he says "[Slater's] struggle with officers, coupled with his agitated activity and drug use, **likely resulted** in metabolic acidosis of his blood, **possible** electrolyte abnormalities, and **possible** high body temperature…" *Id*. at 12 (emphasis added). During his deposition, when asked if he believed Mr. Slater had excited delirium, Dr. Clark responded "It's definitely possible. ." Exh. 5 at 42:18-21. These are all mere "possibilities" and nowhere in his report does he state that his opinions are made with any reasonable degree of medical certainty or probability. Dr. Clark even testified that he "never in [his] report state[d] that [Slater] was in excited delirium" and had "not really reflected on at what point if [Slater] was in excited delirium..." Exh. 5 at 42:22-43:5, 49:3-21.

Dr. Ruffalo also was not able to provide a clear opinion regarding "excited delirium" as it applied to Mr. Slater during his deposition. When asked about *when* he believed Slater began to be in a state of "excited delirium," Dr. Ruffalo responded:

> "Well, the best I can tell, it seems to have started – and again, **this is pure speculation**. I can't prove it one way or another, but it probably started when he is to the point where you can kind of guess that something is going on. But again, this is retrospectively, you can call it. Prospectively, not necessarily. When he's in the back seat of the car and agitated, you might think maybe he could be in excited delirium, but that doesn't necessarily mean you know. … this is all retrospective, because other people could just, you know, stop moving because

they're so exhausted they stop moving. And that doesn't mean they're in excited delirium."

Exh. 6 at 38:12-39:16. When asked if he thought Slater was in a state of "excited delirium", Ruffalo testified that it is "possible excited delirium, along with that, as well, which seems to be the issue. Although it could have been just methamphetamine intoxication as well. And, again, there is no way to prove it one way or the other." Exh. 6 at 40:9-23.

Dr. Wetli also was not able to provide a clear analysis regarding "excited delirium" in Mr. Slater's case. During his deposition, when asked if he had an opinion about when Mr. Slater's alleged "excited delirium" began, Dr. Wetli responded "I have no idea when it started that day. … I don't think anybody really knows for sure." Exh. 7 at 29:20-21:2. None of Defendants' experts are able to reliably apply this theory to the facts of the case and cannot one way or another say that Mr. Slater was suffering from "excited delirium" during the incident at issue.

Defendants' experts' opinions regarding "excited delirium" are pure speculation and accordingly must be inadmissible. "An expert's testimony may be excluded where it is based on subjective beliefs or unsupported speculation which is no more than unreliable *ipse dixit*[3] guesswork." *Friend v. Time Mfg. Co.*, 422 F.Supp.2d 1079, 1081 (D. Ariz. 2005) (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)) (holding that trial court may properly exclude *ipse dixit* opinions where "there is simply too great an analytical gap between the data and the opinion proferred"); *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion that is connected to existing data only by the ipse dixit of the expert.")

Furthermore, there is no evidence that any of the physiological symptoms associated with "excited delirium" were present in Slater's case and indeed Defendants'

[3] A dogmatic and unproven statement. Dictionary.law.com.

experts are unable to point to any evidence of physiological symptoms of "excited delirium" in Mr. Slater's case. Expert opinions must be "based on sufficient facts or data." *McCrary v. Elations Co. LLC*, No. EDCV130242JGBSPX, 2014 WL 12589137, at *12 (C.D. Cal. Dec. 2, 2014) (quoting Fed. R. Evid. 702(b)).

The only such physiological symptom of "excited delirium" that was measured in this case—Mr. Slater's temperature—refutes the theory that he was in a state of "excited delirium". Mr. Slater's temperature was taken approximately half an hour after his death, and was measured at 98.1 degrees, which is just *below* normal temperature, which both Dr. Ruffalo and Dr. Wetli concede. Exh. 1 at 17; Exh. 6 at 43:2-23; Exh. 7 at 31:20-32:4, 39:8-10. Clearly Mr. Slater did not have a "dangerously elevated temperature". Regarding other symptoms of "excited delirium" referenced by Dr. Wetli,[4] Mr. Slater's pH level was never measured. Exh. 7 at 38:18-39:4. There was no evidence of increased potassium in Mr. Slater's case. *Id*. at 39:13-17. There was no physical evidence that Mr. Slater had lactic acidosis. *Id*. at 40:11-15.  There is no evidence that a spike in noradrenaline contributed to Mr. Slater's death. *Id*. at 44:15-20. In fact, when asked about whether these symptoms were present in Mr. Slater's case, Dr. Wetli testified "We don't know. None of these things were measured." *Id*. "Excited Delirium" is also not indicated anywhere in the autopsy report. Exh. 6 at 95:17-19; Exh. 7 at 40:24-41:12; Autopsy report. In the absence of any physiological evidence to support their position, Defendants' experts primarily base their opinions that Mr. Slater had "excited delirium" on descriptions of his behavior, such as being mesmerized by the television screen or agitated. However, such analysis and methodology—using a subject's behavior as a basis for finding a diagnosis of "excited delirium"—has been rejected by Courts. *See Petro v. Town of West Warwick ex rel. Moore*, 889 F.Supp.2d

---

[4] In addition to the symptoms listed above according to Clark's report, Dr. Wetli cited a rise in noradrenaline in the blood, drop in blood pH level, and increased lactic acid as symptoms of "excited delirium". Exh. 7 at 37:20-38:12, 41:13-42:2.

PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE, TESTIMONY, OR REFERENCE TO
EXCITED DELIRIUM SYNDROME

292, 317 (D.R.I. 2012) ("The Court rejects Dr. Wetli's testimony that excited delirium syndrome arose instantly in the circumstances of this case, or that [the decedent's] behavior during the altercation with police tends to prove he had excited delirium syndrome.").

Dr. O'Halloran in his supplemental report also explained why the theory of "excited delirium" is not relevant to the facts of this case, in response to Dr. Ruffalo's report:

> "Dr. Ruffalo listed nine items as 'major criteria' for [excited delirium]: (1) sweating, agitation, (3) staring at an LED screen, (4) talking to himself and screaming non-sequitur thoughts, (5) acting paranoid, (6) acting delirious, and (7) having an elevated heart rate, (8) sudden agonal breathing, loss of consciousness, rapid loss of heart rate to asystole, and (9) vomiting. Of those, (3), (8), and (9) are not diagnostic criteria on any variation of [excited delirium] definition [Dr. O'Halloran has] seen. (2), (4), (5) and (6) are all part of the same thing, 'namely agitated (excited) delirium'. (1) sweating, and (7) having an elevated heart rate, are so common in situations of exertion and adrenaline stress as to be useless diagnostically, generally and in this case. The criteria listed are no different than what can be seen in methamphetamine toxicity situations and are non-specific."

Report of Ronald O'Halloran, attached as Exhibit 9 to Declaration of Tanya Sukhija ("Exh. 9"), at 3. *See General Elec. Co.*, 522 U.S. at 146 (holding that a court may exclude expert opinion where it deems that the expert's opinion is not sufficiently supported by the facts or evidence upon which the expert relies in support of that opinion).

### 4.    *Evidence of "Excited Delirium" Will Not be Helpful to the Jury.*

Testimony regarding "excited delirium" would not be helpful to the jury, and would only be confusing and prejudicial. Dr. Clark, for example, went to great lengths in his report to explain the symptoms of "excited delirium" but in his deposition testified: "[Y]ou recall from my report that I never in my report state that he was in excited delirium. So I guess I've not really reflected on at what point if he was in excited delirium that he entered excited delirium. … Now, to me I would call that

methamphetamine intoxication. … So me trying to say something is or isn't excited delirium is an interesting exercise but this whole case to me is about methamphetamine intoxication." Exh. 5 at 42:22-44:6. Certainly such ambiguous testimony and "pure speculation" cannot by any stretch of the imagination be helpful to the jury. *See* Exh. 6 at 38:12-18.

As Defendants primarily appear to rely on Dr. Leticia Schuman's autopsy report and finding that acute methamphetamine intoxication was Mr. Slater's death, any reference to "excited delirium" is wholly unnecessary and irrelevant. *See also, e.g.*, Defendants' Combined Statement of Facts in Support of Defendants' Motion for Summary Judgment [Dkt. 137, ¶ 144]. In addition to being reliable, expert testimony must also be relevant in order to be admissible. *Daubert*, 509 U.S. at 509. Whether testimony is relevant depends on whether testimony can properly be applied to assist the trier of fact in understanding and deciding facts at issue. *Id.* at 589, 591; *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1191-92 (9th Cir. 2007). Trial courts must ensure that 'the proposed **expert** testimony is 'relevant to the task at hand.'' Thus the **expert** opinions must "logically advance[ ] a material aspect" of the case. *McCrary*, 2014 WL 12589137, at *11 (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 2014)). To meet the standard under *Daubert*, expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 589.

It is not clear how proffering a theory that "excited delirium" caused Mr. Slater's death—as opposed to relying on Dr. Schuman's autopsy report—advances a material aspect of this case, including for Defendants. Among the central factual issue in this case are whether Defendants' use of force and restraint caused or contributed to the death of Mr. Slater, and whether asphyxia was a cause of death rather than the autopsy finding of methamphetamine intoxication. Evidence that a third theory of "excited

delirium" caused Mr. Slater's death has absolutely no probative value in resolving these factual disputes.

**D.     In the Alternative, Evidence Regarding "Excited Delirium" Should be Excluded Under Federal Rule of Evidence 403**

If not irrelevant, the aforementioned opinions would be unduly prejudicial, confusing, a waste of time, and in the alternative, should be excluded under Federal Rule of Evidence 403. Rule 403 excludes relevant evidence "if its probative value is substantially outweighed by the danger of the unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. To the extent "excited delirium" is indistinguishable from methamphetamine intoxication, to the extent Defendants' experts conflate "excited delirium" with methamphetamine intoxication, and to the extent Defendants' experts cannot even adequately explain or understand this phenomenon, this would only serve the confuse the issues and waste the Court's and the jury's time. In a confirming letter Defendants' counsel sent to Plaintiffs' counsel regarding their meet and confer efforts regarding motions in limine, Defendants' counsel conceded that the issue of "excited delirium" confuses the opinions of their experts, stating: "Defendants explained that the use of the term 'excited delirium' by some defense experts needlessly confuses their agreement on the cause of Slater's death." Furthermore, having three experts render opinions regarding "excited delirium" is unnecessarily cumulative and a waste of time. *Id*.; *See* Plaintiffs' Motion in Limine to Exclude Cumulative Expert Testimony.

Admission of the aforementioned opinions also pose a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Indust*., 972 F.2d 507, 516 (3d Cir. 1992); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (en banc); *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007). The central legal issues in this case are whether

Defendants used excessive force in violation of the Constitution and state law. Refuting the inferences that Defendants may attempt to raise regarding "excited delirium" which have nothing to do with these central disputes will unduly consume this Court's and the jury's time.

### E.     Conclusion

For the reasons stated above, Plaintiffs respectfully request this Honorable Court to grant their Motion in Limine to any evidence, testimony, or reference to excited delirium syndrome.

## II.     DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3

### A.     The Opinions of Defendants' Medical Experts Regarding Excited Delirium are Relevant and Admissible.

Fed.R.Evid. 702 states in pertinent part: "A witness who is qualified as an expert by knowledge, skill, experience, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

"The Federal Rules of Evidence allow expert testimony that will assist a trier of fact in understanding the evidence or in determining a fact in issue, so long as '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and

methods reliably to the facts of the case.'  Fed. R. Evid. 702.  It is the trial judge's responsibility to ensure 'that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  In making this determination, the judge must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue.'  *Id*. at 592-93."  *Boyd v. City and County of San Francisco*, 576 F.3d 938, 945 (9th Cir. 2009).

"Although '[m]any factors will bear on the inquiry,' some of the considerations considered relevant by the Supreme Court to such an assessment include: (a) whether the theory or technique can and has been tested; (b) whether the theory or technique has been subjected to peer review and publication; (c) the known or potential rate of error for the technique; and (d) the theory or technique's general degree of acceptance in the relevant scientific community.  *Id*. at 593-94.  [fn. omitted]"  *Boyd, supra*, 576 F.3d at 945 (bracketed material added).

"The Supreme Court has taken care to explain that 'a trial court may consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is "flexible," and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case.'  *Kumho Tire Co*., 526 U.S. at 141."  *Boyd, supra*, 576 F.3d at 945, fn. 4.

> ### 1.    *Defendants' Expert Designations And Reports Were Sufficient To Put Plaintiffs On Notice That Defendants' Medical Experts Would Render Opinions On Excited Delirium.*

Defendants' initial and supplemental disclosures indicated that Dr. Clark was designated to address "narcotics-related behaviors and capacities and comparable toxicological and medical factors *associated with decedent's incident conduct and/or*

*death*"; Dr. Ruffalo was designated to address "pharmacology, toxicology, narcotics effects and capacities and relation to causation/contribution of death, and comparable toxicological and medical factors *associated with decedent's incident conduct and/or death*"; and Dr. Wetli was designated as a rebuttal witness to address "causation of death for decedent and related forensic pathological/medical issues".

Further, Page 17 of the written report of Dr. Ruffalo dated June 16, 2017, specifically refers to his opinion on excited delirium.  [Sain decl, Ex. 15].  The written report of Dr. Wetli, dated July 21, 2017, specifically refers to excited delirium at pages 4 and 5 of his report.  [Sain decl., Ex. 16].  And Opinions 1, 3, and 4 in Dr. Clark's written report of June 19, 2017 talks about excited delirium.  [Sain decl., Ex. 17].

## 2. *Defendants' Medical Experts Are Sufficiently Qualified To Render Opinions As To Excited Delirium.*

Whether a particular defense medical expert has published any articles or published in any peer reviewed journals on excited delirium, or whether the curriculum vitaes of particular defense medical expert refer specifically to excited delirium, goes to the weight of their opinions, not their admissibility.  "[W]hile differing areas of expertise are perhaps germane to the weight and allowed scope of [the expert's] testimony, they do not bar admissibility.  [citations]."  *Ericson v. City of Phoenix*, 2016 U.S. Dist. LEXIS 152641, *13 (D. Ariz., Nov. 3, 2016).

Further, "[r]ule 702 'contemplates a *broad conception* of expert qualifications.' [citation].  Moreover, 'the advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert.' [citation]; see also Fed. R. Evid. 702 advisory committee's note ('In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.')."  *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1015 (9th Cir. 2004) (emphasis in original), citing *Thomas v. Newton Int'l Enters.,* 42 F.3d 1266, 1269 (9th Cir. 1994).

Thus, "[l]ack of particularized expertise goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert. [citation]." *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993).  See also: *Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1998) ["CAN argues that the admission of the testimony of Dr. Shupe, whom Scott proffered as an expert in the 'anti-cult movement,' violated Rules 702 and 703 of the Federal Rules of Evidence….  The district court properly admitted Dr. Shupe's testimony. Shupe is qualified; he is a professor of sociology who has studied and written about the 'anti-cult movement' for the last 19 years. [citation].  CAN's argument that Shupe did not specifically study CAN or its practices does not undermine Shupe's credibility. [citation]."], and *Affiliated FM Ins. Co. v. LTK Consulting Servs.,* 2014 U.S. Dist. LEXIS 53211, *10 (W.D. Wash. Apr. 16, 2014) ["LTK asserts that, despite Mr. Way's qualifications as an electrical engineer in general, because he has no particular experience pertaining to grounding systems for mass transit vehicles, he is not qualified to propone any opinions concerning the grounding system on the Monorail....  Any deficiency in Mr. Way's particularized expertise goes to the weight that should be accorded his testimony, and not the admissibility of his opinion as an expert witness. [citation]."]

### 3. *Excited Delirium Has Been Determined To Be The Product Of Reliable Principles And Methods.*

Excited delirium meets the *Daubert* standard as to admissibility.  In *Estate of Barnwell v. Roane Cnty.*, 2016 U.S. Dist. LEXIS 48861 (E.D. Tenn. Apr. 12, 2016), the district court noted that "several professional publications recognize excited delirium as a real syndrome. While there may be multiple etiologies for excited delirium, as recognized in The Journal of Emergency Medicine, this alone is not sufficient to exclude any mention of the diagnosis….  The Court notes that Dr. Cogswell testified that excited delirium is an accepted diagnosis in the 'forensic pathology community because we're the ones who see it.' [citation]. Dr. Cogswell is certified by the American

Board of Pathology in anatomic, clinical, and forensic pathology, and he has performed over 5,000 autopsies. [citation]. The Court finds Dr. Cogswell's testimony regarding excited delirium to be reliable." *Estate of Barnwell, supra*, 2016 U.S. Dist. LEXIS 48861, at *8-9.

Further, "[T]he Court finds that the Plaintiff's concern regarding Dr. Cogswell's sources of information can be adequately addressed during cross-examination, and it is not a reason to exclude Dr. Cogswell's opinion. [citation]." *Estate of Barnwell, supra*, 2016 U.S. Dist. LEXIS 48861, at *10.

### 4.  *Defendants' Medical Experts Have Reasonably Applied The Principles And Methods To The Facts Of This Case.*

Plaintiff misstates the testimony of defendants' medical experts.  Dr. Clark does not say that Slater was in excited delirium.  [Sain decl., Ex. 19, Clark Depo., 48:20-49:24].  Dr. Clark explained that while excited delirium is a term used by others, Dr. Clark's opinion is that Slater had methamphetamine intoxication.  [Sain decl, Ex. 19, Clark Depo., 43:19-44:6; 46:21-47:4].  Dr. Ruffalo testified that Slater was most likely in a state of excited delirium at the time Slater passed out in the back seat of the patrol car.  [Sain decl, Ex. 20, Ruffalo Depo., 39:17-25].  And Dr. Wetli was of the opinion that Slater's excited delirium apparently started either at the time he left his house or shortly thereafter.  [Sain decl., Ex. 21, Wetli Depo., 29:24-25].  But Dr. Wetli further explained that a person can go in and out of excited delirium.  [Sain decl., Ex. 21, Wetli Depo., 30:23-31:9; 34:7-15].  Thus, plaintiffs claim that the failure of defendants' medical experts to pinpoint when Slater was first in a state of excited delirium does not render their opinions speculative and inadmissible.

As to the presence of physiological symptoms of excited delirium, Dr. Wetli testified that a sudden loss of vital signs is objective evidence that Slater had lactic acidosis.  [Sain decl., Ex. 21, Wetli Depo., 40:11-20].  Further, Dr. Wetli testified that the cessation of the physical stressor causes a surge in noradrenaline, which can cause a

cardiac arrhythmia and death.  [Sain decl, Ex. 21, Wetli Depo., 41:16-42:2, 42:21-43:3].

Slater underwent strenuous exertion.  [Sain decl., Ex. 21, Wetli Depo., 43:13-17].

Noradrenaline cannot be measured in a blood draw.  [Sain decl., Ex. 21, Wetli Depo., 44:21-45:3].

### 5. Expert Medical Opinions As To Excited Delirium Will Assist The Trier Of Fact.

"The Daubert opinions emphasize that causation need not be established to a high degree of certainty for expert testimony to be admissible under Rule 702. The Supreme Court stressed that, 'it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguably, there are no certainties in science.' Daubert, 509 U.S. at 590. On remand, we stated: 'Not knowing the mechanism whereby a particular agent causes a particular effect is not always fatal to a plaintiff's claim. Causation can be proved even when we don't know precisely *how* the damage occurred, if there is sufficiently compelling proof that the agent must have caused the damage *somehow*.' [citation]."  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998) (emphasis in original).

Here, plaintiffs seek to demonstrate that the opinions of defendants' medical experts as to excited delirium will not assist the trier of fact, by pointing to the testimony of a defense expert who was not even designated by defendants to testify as to excited delirium- Dr. Clark.  Dr. Clark testified that while Slater could have been in excited delirium, Dr. Clark's opinion is that Slater was in a state of methamphetamine intoxication.  [Sain decl., Ex. 19, Clark Depo., 49:16-24].

Defendants' medical experts are sufficiently qualified to testify as to excited delirium.  Excited delirium has been recognized as being based on reliable principles and methods.  And defendants' medical experts have reasonably applied the principles and methods of excited delirium to the facts of this case.

### 6.    The Evidence Of Excited Delirium Is More Probative Than Prejudicial And Should Not Be Excluded Under Federal Rule of Evidence 403.

Fed.R.Evid. 403 "[s]ets a fairly stringent standard. In determining whether to exclude evidence under Rule 403, the District Court must look not merely for prejudice, but unfair prejudice, defined in the Advisory Committee's Note to Rule 403 as 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' Weinstein's Evidence P 403(03) at 403-15 (1979) suggests that 'evidence that appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action' may fall within this disfavored category of evidence."  *United States v. Kenny*, 645 F.2d 1323, 1342 (9th Cir. 1981).  Plaintiffs have not demonstrated that there is any unfair prejudice from the admission of evidence of excited delirium.

Nor will the evidence of excited delirium result in a confusion of the issues, misleading the jury, wasting time, nor needlessly presenting cumulative evidence under Fed.R.Evid. 403.  The central legal issues in this case are not only whether defendants' use of force was reasonable, but also whether any force used by defendants was a cause or contributing factor to Slater's death.  The evidence of excited delirium goes directly to the cause of death.

### B.    Conclusion

Accordingly, defendants request that plaintiffs' motion in limine no. 3 to exclude all evidence of excited delirium be denied.

//
//
//
//

### III.   PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 3

Plaintiffs contend that Defendants' opposition to their motion is unpersuasive, and accordingly their motion should be granted.

### A.   Defendants Unpersuasively Argue that Their Experts Were Properly Designated or Qualified to Render Opinions Regarding Excited Delirium.

Defendants erroneously contend that their expert designations and reports were sufficient to put Plaintiffs on notice that Defendants medical experts would render opinions on excited delirium. As to Dr. Clark, Defendants even contradict themselves and within their own opposition cause only further confusion on whether Dr. Clark was designated to render such opinions. They initially argue Dr. Clark was designated to address "narcotics-related behaviors and capacities and comparable toxicological and medical factors associated with decedent's incident conduct and/or death", which first of all, does not include a reference to excited delirium and it is not inherent or to be readily assumed that excited delirium is part and parcel of narcotics related behaviors. Second of all, later in their opposition Defendants contend "Dr. Clark does not say that Slater was in excited delirium" and that Dr. Clark "was not even designated by defendants to testify as to excited delirium". If Defendants themselves concede that Dr. Clark was not designated to testify as to excited delirium, then this only provides additional support for Plaintiffs' motion that at minimum there is no purpose for Dr. Clark to be offering opinions regarding excited delirium at trial and any opinions or information he provides regarding excited delirium would not be helpful to the jury. Defendants note "Dr. Clark explained that while excited delirium is a term used by others, Dr. Clark's opinion is that Slater had methamphetamine intoxication." If that is the extent of Dr. Clark's opinion, he should simply focus on methamphetamine

PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE, TESTIMONY, OR REFERENCE TO EXCITED DELIRIUM SYNDROME

intoxication—adding reference to excited delirium has no added value and would only be confusing to the jury.

As to Dr. Ruffalo and Dr. Wetli, that they were designated to address "pharmacology, toxicology, narcotics effects and capacities and relation to causation/contribution of death, and comparable toxicological and medical factors associated with decedent's incident conduct and/or death" and "causation of death for decedent and related forensic pathological/medical issues", respectively, does not inherently include "excited delirium". Defendants also fail to address Plaintiffs' contention that Dr. Wetli exceeded the scope of his role as a rebuttal expert. As he was designated as a rebuttal expert to rebut the opinions of Dr. O'Halloran, his opinions should be limited to responding to Dr. O'Halloran's opinions regarding positional asphyxia and whether or not methamphetamine intoxication was a cause of Mr. Slater's death – rendering new opinions about excited delirium is unrelated and beyond his proper scope.

**B.  Experts' Expertise and Peer Reviewed Publications are Relevant Factors Regarding Admissibility of Expert Opinion.**

Defendants' argument that an expert's expertise does not go toward the admissibility of expert opinion does not comport with, and in fact directly contradicts, what is explicitly set forth in *Daubert*. *Daubert* established that one of the factors to evaluating *admissibility* of expert testimony is "the expert's qualification to present the opinions offered". *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93  (1993). "The expert's particular expertise" is a factor the Court should consider in determining the admissibility and reliability of expert testimony.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999); see also *U.S. v. Scholl*, 959 F.Supp. 1189, 1191 (D. Ariz. 1997) ("the court should further compare the expert's area of expertise with the particular opinion the expert seeks to offer. Here the expert should be permitted

to testify only if the expert's particular expertise however acquired enables the expert to give an opinion that is capable of assisting the trier of fact.").

In addition, while peer-reviewed publications may not be necessary, "'[S]ubmission to the scrutiny of the scientific community' can be a strong indicator of reliability 'because it increases the likelihood that substantive flaws in methodology will be detected.' *Murray v. S. Route Mar. SA*, No. 14-36056, 2017 WL 3758326, at *5 (9th Cir. Aug. 31, 2017) (quoting *Daubert*, 509 U.S. at 593). Defendants do not cite any such publications by their own experts (to provide a foundation for their qualifications) or even by any other experts (to demonstrate that theories regarding excited delirium are the produce of reliable principles and methods). In the absence of such evidence, Defendants should be able to point to other particularized facts that their experts are qualified to render opinions regarding excited delirium (and that it is the produce of reliable principles and methods) but fail to point to any such particularized experience or other evidence.

C.     **Defendants Fail to Persuasively Argue that Theories Regarding Excited Delirium are the Product of Reliable Principles and Methods.**

As to whether excited delirium is the product of reliable principles and methods, Defendants only cite to one unpublished district court case from the Eastern District of Tennessee. This is unpersuasive and not binding on this court. Even if it was persuasive, just because one expert used reliable principles and methods to render opinions regarding excited delirium does not mean Defendants' experts have done so. Much of their testimony is speculative and they point to several 'unknowns' regarding excited delirium. They must be able to explain their principles and methods they used to determine that Mr. Slater experienced excited delirium but have not adequately done so.

//

//

**D.      Defendants Unpersuasively Argue Their Experts Reasonably Applied their Principles and Methods to the Facts of This Case.**

Defendants further contend their experts reasonably applied their principles and methods to the facts of this case. However, as above, they have not in detail explained what those methods and principles are. Defendants contend their experts reasonably applied their principles and methods by pointing to their experts' conclusions: "Dr. Ruffalo testified that Slater was most likely in a state of excited delirium at the time Slater passed out in the back seat of the patrol car" and "Dr. Wetli was of the opinion that Slater's excited delirium apparently started either at the time he left his house or shortly thereafter". However, it is well established that the focus of the *Daubert* "must be solely on principles and methodology, not on the conclusions they generate." *Daubert,* 509 U.S. at 595. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004). Absent more thorough explanation of their principles and methods and application of any principles and methods to this case, Defendants' experts should be precluded from rendering opinions regarding excited delirium. As set forth above, Defendants even concede "Dr. Clark does not say that Slater was in excited delirium."

Defendants attempt to provide a very brief foundation for Dr. Wetli's opinions, but provide no such analysis for Dr. Ruffalo's (or Dr. Clark's). Looking more closely at Dr. Wetli's testimony in that regard also evidences Dr. Wetli's circular (and unpersuasive) reasoning. When asked whether there was any objective evidence that Mr. Slater had lactic acidosis, Dr. Wetli responded "**No, except that he's got excited delirium** and he has a sudden loss of vital signs." Exh. 7 at 40:11-15 (emphasis added). How can lactic acidosis on its own then be evidence of excited delirium?

**E.      Defendants Fail to Explain How Opinions Regarding "Excited Delirium" Will be Helpful to the Jury, and There is No Articulable Probative Value that Could Outweigh its Prejudicial Nature.**

In Defendants' opposition, they further have a section entitled "Expert Medical Opinions as to Excited Delirium Will Assist the Trier of Fact" but in the substance following provide no concrete explanation as to how it will help the jury, and particularly how it has any added value beyond their position that Mr. Slater allegedly died of methamphetamine intoxication. As to prejudice, absent any compelling reason why expert opinions would have any helpful or probative value for the jury, Defendants cannot show that it would be more probative than prejudicial. As set forth above, Plaintiffs contend evidence of this theory would only be confusing to the jury.

**F.      Conclusion**

Based on the foregoing, Plaintiffs respectfully request this Court to grant their Motion in Limine No. 3 to exclude expert opinions regarding "excited delirium".

Respectfully submitted,

DATED: September 18, 2017     LAW OFFICES OF DALE K. GALIPO
                              LAW OFFICE OF SHARON J. BRUNNER
                              LAW OFFICE OF JAMES S. TERRELL

                              By:      _/s/ Dale K. Galipo_____
                                       Dale K. Galipo
                                       *Attorneys for Plaintiffs*

DATED: September 18, 2017     MANNING & KASS, ELLROD, RAMIREZ & TRESTER

                              By:      _/s/ Andrea K. Kornblau_____
                                       Tony Sain
                                       Andrea K. Kornblau
                                       *Attorneys for Defendants*